**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY McHALE,<br><br>        Plaintiff,<br><br>v.<br><br>TAYLORED SERVICES, LLC,<br><br>        Defendant. | Civil Action No.: 16-1785 (JLL) (JAD)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Plaintiff Timothy McHales's Motion to Confirm in Part and Modify in Part an Arbitration Award. (ECF No. 9.) The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court shall grant the motion.

**BACKGROUND**[1]

The underlying arbitration arises from McHale's employment at Taylored Services, LLC ("Defendant" or "Taylored").

**A. McHale's Employment History at Taylored**

Taylored hired McHale in June 2011 as its Chief Operating Officer ("COO") in Edison, New Jersey. McHale signed an employment agreement (the "Agreement") on November 1, 2012. (ECF No. 9-2, Bernstein Cert., Ex. 1.) Sections 5 pertains to "Termination of Employment." Section 5(c) provides that McHale can be terminated "for Cause" for certain acts, including those

---

[1] Because the facts of this matter are not in dispute, and set forth at length in the underlying arbitration award, the Court provides them in summary fashion as necessary to provide context for this Court's review.

1

amounting to "gross negligence" or that are "fraudulent or illegal. (*Id.* § 5(c).) On the other hand, Section 5(d) provides that McHale is entitled to severance if he is terminated without cause, but further states that "[Taylored] shall have no obligation to pay severance compensation to [McHale] following any breach by [McHale] of any of the restrictive covenants contained in Section 7 . . . ." (*Id.*)[2] The relevant restrictive covenants, in turn, provide as follows:

> **7. Restrictive Covenants.** . . . (b) All information and documents relating to [Taylored] shall be the exclusive property of [Taylored], and [McHale] shall use his best efforts to prevent any publication or disclosure of such information and documents. Upon termination of the employment of [McHale] with [Taylored], [McHale] shall not take from and will promptly return to [Taylored] all documents, records, customer lists, computer programs, equipment designs, technical information, reports, writings and other similar documents containing Confidential or Proprietary Information of [Taylored], including copies thereof then in [McHale's] possession or control.
>
> \* \* \*
>
> **9. Remedies.** In the event of a breach or threatened breach by [McHale] [of Section 7], [McHale] hereby consents and agrees that [Taylored] shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that money damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages or other available forms of relief.

(*Id.* §§ 7(b), 9.) The Agreement further generally provides for arbitration:

> **17. Governing Law: Arbitration and Dispute Resolution.** This Agreement, for all purposes, shall be construed in accordance with the laws of the State of New Jersey without regard to conflicts of law principles. Other than as set forth in Section 9, arbitration shall

---

[2] *See also id.* § 6(b) ("The obligation of [Taylored] to make payments to . . . [McHale] under Section 5 hereof is expressly conditioned upon [McHale's] continued full performance of obligations under Section[] 7 . . . .").

2

> be the exclusive process for the resolution of any claim, action, dispute or controversy of any kind or nature, at law or in equity, as between or among [Taylored] and [McHale] and related to, arising from or otherwise with respect to this Agreement or the subject matter hereof. . . . The prevailing party shall be entitled to reimbursement of costs, fees and expenses (including, without limitation, filing, arbitrator and reasonable attorneys' fees and expenses) reasonably incurred in connection with the arbitration. . . . All decisions of the arbitrator shall be final, binding, conclusive and non-appealable on all parties. Judgment may be entered upon any such decision in accordance with applicable law in any court having jurisdiction thereof.

(*Id.* § 17.)

On July 19, 2013, Taylored terminated McHale for purported gross negligence concerning the alleged hiring of illegal aliens by one of Taylored's staffing agencies. (ECF No. 9-2, Bernstein Cert., Ex. 2.)

### B. McHale's Retention of Taylored's Laptop

McHale retained possession of his company-issued laptop following termination, despite Taylored's repeated requests that he return the equipment. (ECF No. 10-1, Laura Cert. Exs. B-E.) On October 14, 2013, Taylored filed a Verified Complaint and Order to Show Cause in the Superior Court of New Jersey, Morris County, Chancery Division, alleging that McHale breached the Agreement by retaining possession of his laptop. (ECF No. 9-2, Bernstein Cert., Ex. 5.) Taylored's request for temporary restraints was denied via Order dated October 15, 2013. (ECF No. 9-2, Bernstein Cert., Ex. 6.) Via letter dated November 15, 2013, Taylored advised the Superior Court that McHale had returned the laptop, and Taylored accordingly withdrew the Order to Show Cause as moot. (ECF No. 9-2, Bernstein Cert., Ex. 7.)

### C. Relevant Arbitration Proceedings

On April 13, 2014, McHale initiated arbitration (the "Arbitration") against Taylored on grounds that he had been terminated without cause, and seeking severance pay as outlined in the

Agreement. (ECF No. 9-2, Bernstein Cert., Ex. 8.) Taylored submitted the following "Response and Defenses" to McHale's demand for Arbitration:

1. [Taylored] denies any and all liability to [McHale] for contractual benefits, legal costs and business expenses claimed in the Demand.
2. Any purported obligation of [Taylored] to pay severance benefits to [McHale] was discharged due to [McHale's] breach of the restrictive covenants contained in Section 7 of the Employment Agreement between [McHale] and [Taylored].

WHEREFORE, [Taylored] seeks an award as follows:

   a. Denying any and all relief to [McHale];
   b. Awarding [Taylored] its reasonable attorneys fees and costs incurred in connection with the arbitration; and
   c. Awarding [Taylored] such other and further relief as is just and proper.

(ECF No. 10-1, Laura Cert., Ex. F.)

After three days of hearings, the parties submitted post-hearing briefs to the arbitrator, Hon. John J. Hughes (Ret.) of JAMS (hereinafter the "Arbitrator"). (ECF No. 9-2, Bernstein Cert., Ex. 3 (McHale Post-Hearing Br.); ECF No. 10-1, Laura Cert., Ex. G (Taylored Post-Hearing Br. – Relevant Excerpts).) As it pertains to the issue before this Court, Taylored argued in part that McHale was not entitled to severance under the terms of the Agreement: according to Taylored, because McHale had failed to return his company-issued laptop for approximately four months post-termination, he had violated section 7 of the Agreement, which, in turn, triggered section 5(d)'s provision that "[Taylored] shall have no obligation to pay severance compensation to [McHale] following any breach by [McHale] of any of the restrictive covenants contained in Section 7 . . . ." (Taylored Post-Hearing Br. at 2, 18-20.) In opposition, McHale argued that he had not used, copied, altered, withheld, or disclosed any confidential information, such that

Taylored was unable to demonstrate any harm stemming from McHale's alleged violation of section 7 of the Agreement. (McHale Post-Hearing Br. at 14-15.) Additionally, McHale contended that because Taylored had violated the Agreement by terminating McHale without cause and without severance, Taylored was legally unable to enforce other provisions which purported to absolve them of their severance obligations. (*Id.* at 22-23.)

On December 22, 2015, the Arbitrator issued a "Reasoned Decision" and "Final Award" pursuant to the JAMS Rules and Procedures. (ECF No. 9-2, Bernstein Cert., Ex. 4 ("Arbitration Award").) Relevant to the issue before this Court, the Arbitrator ultimately held that McHale was not entitled to fees and costs: even though McHale prevailed on the wrongful termination claim, he breached the restrictive covenant pertaining to prompt return of confidential information.

First, the Arbitrator found that McHale was owed severance because he was fired without cause:

> I find that [Taylored] did not reasonably arrive at its determination that Mr. McHale knew about undocumented workers or that he was grossly negligent by not knowing about it. According, [Taylored] breached the employment agreement by firing [McHale] based upon cause. Because [Taylored] breached the contract, Section 5 (d) of the employment agreement will not preclude [McHale's] recovery of damages, although I will address the restrictive covenant in Section 7 in a subsequent point in this opinion. An Award will be entered in favor of [McHale] on the breach of employment agreement claim.

(Arbitration Award at 10.)

Next, the Arbitrator concluded that McHale breached the restrictive covenants in the Agreement. Significantly, in so ruling, the Arbitrator construed Taylored's affirmative defense as a counterclaim:

> I have already decided that [Taylored's] breach of the employment [agreement] for firing [McHale] for cause nullifies Section 5 (d) of the agreement which relieves any obligation to pay severance if a

> restrictive covenant was breached. However, that decision does not nullify the effect of Section 7. In the Answer to the Demand for Arbitration, the claim that Mr. McHale violated a restrictive covenant is pled as an affirmative defense.
>
> I strongly believe that employers generally, and in particular here, have an over-arching interest in protecting its confidential and proprietary information. Mr. McHale admits keeping the laptop for four months necessitating repeated requests and the filing of a lawsuit to get it back. He had no justifiable reason for not returning it promptly after his termination regardless of whether he was fired with or without cause.
>
> Based upon my equitable power afforded by the arbitration provision in the employment agreement, I treat the breach of the restrictive covenant requiring return of the laptop as a counterclaim. Mr. McHale admits he kept the laptop and I find he had no justifiable reason for not returning it. Accordingly, I find that [McHale] breached the restrictive covenant requiring prompt return of the laptop and I will enter an award on that claim in favor of [Taylored].

(*Id.* at 10-11.) Despite McHale's breach of the restrictive covenant, the Arbitrator noted that there was no evidence in the record regarding damages for the breach:

> With respect to damages for breach of the restrictive covenant, I see no testimony or exhibit which quantifies any damages suffered as a result of that breach. I have no evidence what costs were involved in retrieving the laptop. I have no evidence that any confidential information was used or what damage may have resulted. Any number I would put on damages for breach of the restrictive covenant would be purely speculative. However, as will be seen subsequently, [Taylored] will receive some benefit in this regard.

(*Id.* at 12.) Accordingly, the Arbitrator awarded McHale damages in the amount of $215,416.67, and denied Taylored's request for money damages "notwithstanding the breach of the restrictive covenant." (*Id.*)

Finally, with respect to fees and costs, the Arbitrator determined that each side was responsible for their own. After noting section 17 of the Agreement—which states that "[t]he prevailing party shall be entitled to reimbursement of costs, fees and expenses (including, without

limitation, filing, arbitrator and reasonable attorneys' fees and expenses) reasonably incurred in connection with the arbitration"—the Arbitrator concluded that McHale "prevailed on his breach of the employment [agreement] claim and [Taylored] prevailed on the breach of the restrictive covenant counterclaim." (*Id.*) He continued: "I cannot find that one party prevailed 'more' than the other. Because I find that both parties prevailed, the parties will be responsible for their own fees and shall evenly divide the costs of arbitration." (*Id.*)

### D. McHale Seeks to Partially Confirm and Partially Modify the Arbitration Award

On March 17, 2016, McHale filed a Verified Complaint for Summary Action and Order to Show Cause in the Superior Court of New Jersey, Middlesex County, Chancery Division, seeking to partially confirm and partially modify the Arbitration Award—specifically, to confirm the portion of the Arbitration Award pertaining to severance, but to modify the portion pertaining to the Arbitrator's reclassification of the breach of the restrictive covenant as a counterclaim, and the resulting conclusion that McHale is not entitled to fees and costs. (*See* ECF No. 1, Ex. 1.) The state court scheduled a hearing on the Order to Show Cause for April 21, 2016 (*see* ECF No. 6), but Taylored removed the action to this Court on March 31, 2016. (ECF No. 1.)[3]

On May 27, 2016, pursuant to an Order from United States Magistrate Judge Joseph A. Dickson (ECF No. 8), McHale filed a formal motion to confirm arbitration in accordance with Fed. R. Civ. P. 7(b) and L. Civ. R. 7.1 and 7.2. (ECF No. 9; *see* ECF No. 9-1 ("Mov. Br.").) On June 6, 2016, Taylored filed opposition (ECF No. 10 ("Opp. Br.")), and on June 13, 2016, McHale filed a reply (ECF No. 11; *see* ECF No. 12-1 ("Reply Br.").) The matter is now ripe for adjudication.

---

[3] This Court has jurisdiction under 28 U.S.C. § 1332.

## LEGAL STANDARD

This matter is governed by the New Jersey Arbitration Act, *N.J.S.A.* § 2A:23B–1 to –32 ("NJAA") and the relevant provisions pertaining to confirmation and modification of arbitration awards.[4] The NJAA "recognizes the contractual nature of the arbitration remedy and sets forth the details of the arbitration procedure that will apply unless varied or waived by contract[.]" *Fawzy v. Fawzy*, 199 N.J. 456, 469 (2009) (citation omitted).

> From the judiciary's perspective, once parties contract for binding arbitration, all that remains is the possible need to: enforce orders or subpoena issued by the arbitrator, which have been ignored, N.J.S.A. 2A:23B–17(g); confirm the arbitration award, N.J.S.A. 2A:23B–22; correct or modify an award, N.J.S.A. 2A:23B–24, and in very limited circumstances, vacate an award N.J.S.A. 2A:23B–23.

*Minkowitz v. Israeli*, 433 N.J. Super. 111, 134 (App. Div. 2013).

"[T]here is a strong preference for judicial confirmation of arbitration awards." *Linden Bd. of Educ. v. Linden Educ. Ass'n*, 202 N.J. 268, 276 (2010). Generally, "the scope of review of an arbitration award is narrow. Otherwise, the purpose of the arbitration contract, which is to provide an effective, expedient, and fair resolution of disputes, would be severely undermined." *Fawzy*, 199 N.J. at 470 (citing *Barcon Assocs., Inc. v. Tri-Cty. Asphalt Corp.*, 86 N.J. 179, 187 (1981)); *see also N.J. Tpk. Auth. v. Local 196, I.F.P.T.E.*, 190 N.J. 283, 292 (2007) ("Arbitration should spell litigation's conclusion, rather than its beginning."). "Because arbitration is so highly favored by the law, the presumed validity of the arbitration award is entitled to every indulgence, and the party opposing confirmation has the burden of establishing statutory grounds for vacation."

---

[4] McHale initiated this action under *N.J.S.A.* § 2A:24-7 and sought relief under *N.J.S.A.* 2A:24-9. (*See* Mov. Br. at 9-10.) However, those statutes apply only to collective bargaining agreements and are inapplicable here. *N.J.S.A.* § 2A:24-1.1 ("N.J.S.2A:24-1 through N.J.S.2A:24-11 shall only apply to an arbitration or dispute arising from a collective bargaining agreement or a collectively negotiated agreement.") In his reply brief, McHale acknowledges that the applicable provisions in this matter are *N.J.S.A.* §§ 2A:23B-22 and 2A:23B-4. (Reply Br. at 4 n.1.)

8

Pressler & Verniero, Current N.J. Court Rules, comment 3.3.3 on R. 4:5-4 (2015); *see also Twp. of Wyckoff v. PBA Local 261*, 409 N.J. Super. 344, 354 (App. Div. 2009).

## ANALYSIS

McHale moves this Court (1) to confirm, under 2A:23B–22, the portion of the Arbitration Award granting McHale $215,416.67 in severance; and (2) to modify, under 2A:23B–24, the portion of the Arbitration Award pertaining to the breach of the restrictive covenant, and the resulting conclusion that McHale is not entitled to fees and costs. The Court discusses each in turn.

### A. The Court Shall Confirm the Severance Award Under N.J.S.A. § 2A:23B–22

McHale first moves this Court to confirm the portion of the Arbitration Award granting McHale $215,416.67 in severance. According to McHale, because Taylored has not moved for the severance award to be vacated, modified or corrected, the Court should conform this portion of the Arbitration Award.

Section 2A:23B-22 of the NJAA is entitled "Confirmation of Award" and provides in relevant part that "the court shall issue a confirming order unless the award is modified or corrected pursuant to section . . . 24 of this act . . . ." *N.J.S.A.* § 2A:23B-22. Because "an arbitration award is presumed valid[,] . . . [t]he confirmation of the award is merely a pro forma step to convert the award into a judgment[.]" *Walters v. Breathless 2000*, No. A-5235-08T1, 2010 WL 4103683, at *9 (N.J. Super. Ct. App. Div. July 23, 2010) (internal citations and quotation marks omitted).

The Court notes that Taylored did not move to vacate or modify the severance award, and did not oppose McHale's request that this Court confirm this this portion of the Arbitration Award. Accordingly, pursuant to *N.J.S.A.* § 2A:23B-22, the Court shall confirm the portion of the Arbitration Award granting McHale $215,416.67 in severance.

**B. The Court Shall Modify the Arbitration Award to the Extent it Purported to Rule on a Restrictive Covenant Counterclaim that Was Not Submitted, and to the Extent the Counterclaim Was Used as a Basis for Denying Fees and Costs to McHale**

McHale asks this Court to modify the Arbitration Award to "exclude [the Arbitrator's] decision on the restrictive covenant 'counterclaim' and award McHale all his fees and attorney costs." (Mov. Br. at 16.)

Section 2A:23B–24 of the NJAA is entitled "Grounds for modification or correction of award" and provides that "the court shall modify or correct the award if . . . the arbitrator made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted[.]" *N.J.S.A.* § 2A:23B–24(a)(2). "If [such] an application . . . is granted, the court shall modify or correct and confirm the award as modified and corrected." *Id.* § 2A:23B-24(b). As is clear from the language of § 2A:23B–24(a)(2), the inquiry is comprised of two parts, which the Court discusses in turn.

1. Did the Arbitrator Make an Award on a Claim Not Submitted to Him?

The threshold issue is whether the claim submitted to the Arbitrator encompassed McHale's purported breach of the restrictive covenants in a way that would permit the Arbitrator to *sua sponte* raise the issue as a counterclaim. "[O]nly those issues may be arbitrated which the parties have agreed shall be." *Fawzy*, 199 N.J. at 469 (2009) (*In re Arbitration Between Grover & Universal Underwriters Ins. Co.*, 80 N.J. 221, 228-29 (1979)). Generally speaking, it is a well-settled "principle that arbitration is a creature of contract, and an [arbitrator] has the authority to decide only the issues that have been submitted for arbitration by the parties." See *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 578 (3d Cir. 2005) (citing *Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 114 (3d Cir.1996)). It is the arbitrator's task to interpret the scope of the claims submitted for arbitration, and a court's review of that interpretation is "highly

10

deferential." *Id.* At the same time, however, "the courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators." *Id.* (internal quotation marks omitted).

Here, the parties agreed to arbitrate "any claim, action, dispute, or controversy of any kind or nature . . . arising from or otherwise with respect to this Agreement on the subject matter hereof." (Employment Agreement § 17.) Accordingly, McHale appropriately submitted his claim to arbitration. As phrased by McHale, the "dispute" submitted to arbitration was "Wrongful and Unlawful Termination of Employment 'for cause' as noted in attached letter from Taylored Services, LLC CEO William H. Butler to Claimant dated July 19, 2013." (*See* ECF No. 9-2, Bernstein Cert., Ex. 8 at 2.)

The Court finds that the claim submitted to the Arbitrator was whether Taylored was reasonable in terminating McHale "for cause," and, ultimately, whether McHale was entitled to severance. (*Id.*; *see also* Arbitration Award at 2-3.) Whether McHale breached a restrictive covenant by maintaining possession of the company issued was unrelated to the core underlying claim. To be clear, the claim before the Arbitrator involved the circumstances surrounding McHale's termination—specifically, whether McHale was grossly negligent for not knowing that one of Taylored's staffing agencies was employing illegal aliens. Taylored wrongfully fired McHale on this basis. It was only because McHale was wrongly fired in the first place that the restrictive covenants came into play. Taylored then relied on the restrictive covenants as affirmative defense to avoid having to pay severance that was otherwise properly payable to McHale. Although the issues are closely intertwined, they are distinct.

The Arbitrator's language is telling. In the "Introduction," the Arbitrator states that "[t]his Arbitration concerns the alleged wrongful termination of [McHale] . . . ." (Arb. Award. at 2.) The Arbitrator then lays out the general arguments:

> McHale claims that he was fired without cause and is entitled to severance pay in addition to certain other relief. Taylored defends the claims by arguing that the Claimant was fired for either knowing about illegal aliens in [Taylored's] workfore or being grossly negligent if he did not know about that situation. . . . [Taylored] further argues that [McHale] breached a restrictive covenant in the employment agreement and *accordingly is not entitled to any relief*.

(*Id.*) (emphasis added). This phrasing shows that the Arbitrator recognized that McHale's alleged breach of the restrictive covenant was not a claim before the Arbitrator, but rather only an affirmative defense to McHale's argument in support of severance.

It is axiomatic that an affirmative defense is distinct from a counterclaim. An affirmative defense is a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true. *See* BLACK'S LAW DICTIONARY (10th ed. 2014). On the other hand, a counterclaim is a claim for relief asserted against an opposing party after an original claim has been made. *Id.* A "counterclaim" must be a cause of action, and seeks affirmative relief, while a defense merely defeats the plaintiff's cause of action by a denial or confession and avoidance, and does not admit of affirmative relief to the defendant. *See generally Stanton v. City of Philadelphia*, No. 10-2726, 2011 WL 710481, at *4-5 (E.D. Pa. Mar. 1, 2011). A defense cannot be turned into a counterclaim merely by attaching a prayer for relief, even though the facts may constitute both a defense and ground for a counterclaim. *Id.* In such a case, if it is intended to be a counterclaim, it must be pleaded as such and not as a mere defense. *Id.*

The limited case law on *N.J.S.A.* § 2A:23B–24(a)(2) further supports the conclusion that the Arbitrator exceeded his scope by *sua sponte* crafting a counterclaim on behalf of Taylored for McHale's purported breach of the restrictive covenants, and then concluding that Taylored had prevailed on the claim. *See, e.g.*, *Habick v. Liberty Mut. Fire Ins. Co.*, 320 N.J. Super. 244 (App. Div. 1999) (modifying award where arbitrator ruled on claim regarding arthroscopic knee surgery, when in fact the claim submitted was limited to total knee replacement); *Dorfner v. Point Emergency Physicians, P.A.*, 2006 WL 1071547 (App. Div. Apr. 25, 2006) (modifying award to exclude judgment against an individual who appeared and participated in the arbitration, but against whom plaintiff did not individually seek relief); *J & T Bros., LLC v. Pacelli*, No. A-1010-11T2, 2012 WL 2579500 (N.J. Super. Ct. App. Div. July 5, 2012) (where arbitrator determined that ambiguity as to real party at interest meant that individual defendant could not be held personally liable for damages, motion to modify award denied on grounds that merits would be affected if award modified to hold individual defendant personally liable); *Brockwell & Carrington Contractors, Inc. v. Four Strong Builders, Inc.*, No. A-4876-10T2, 2012 WL 2737282 (N.J. Super. Ct. App. Div. July 10, 2012) (denying motion to modify award with respect overpayment where party was "clearly on notice" of the claim and had "thoroughly briefed" the issue prior to the arbitrator's decision); *Withum, Smith & Brown v. Coast Auto. Grp., Ltd.*, No. A-2026-10T1, 2012 WL 489020 (N.J. Super. Ct. App. Div. Feb. 16, 2012) (where parties expressly agreed to arbitrate "any and all fee-related disputes," arbitrator had authority to rule on fee issues under legal theories not explicitly presented by the parties).

Particularly on point is *Habick*, where the Appellate Division reversed the trial court's denial of Habick's motion to modify an arbitration award. 320 N.J. Super. 244, 254 (App. Div. 1999). After Habick's 1992 automobile accident, her PIP carrier approved arthroscopic surgery

13

on her right knee. *Id.* at 245. Habick's treating physician later recommended knee replacement in lieu of the arthroscopic procedure. *Id.* Liberty denied payment on the basis of its own medical examiner's report, and Habick commenced arbitration. *Id.* The arbitrator denied Habick's claim for knee replacement, finding that it was not warranted by a condition caused by the accident. *Id.* In pertinent part, the Appellate Division determined that the claim submitted to the arbitrator was whether the insurer should pay for total knee replacement; the arbitrator's opinion on arthroscopic surgery was not before him. *Id.* at 254. Accordingly, the Appellate Division modified the arbitration award "to the extent the arbitrator's award purported to make findings with respect to issues other than the total knee replacement procedure," as those findings went "beyond the scope of the arbitrator's authority." *Id.* Similarly, here, the claim submitted to the Arbitrator was whether Taylored was reasonable in terminating McHale "for cause," and, ultimately, whether McHale was entitled to severance; whether Taylored could prevail on its own claim for McHale's purported breach of the restrictive covenants was not before him.

### 2. May the Award Be Corrected Without Affecting the Merits of the Decision Upon the Claims Submitted?

Having determined that McHale's breach of the restrictive covenants was not a claim submitted to the Arbitrator, the next issue for this Court to determine is whether the award given to Taylored on that basis "may be corrected without affecting the merits of the decision upon the claims submitted." *N.J.S.A.* § 2A:23B–24(a)(2). The Court finds that it may be. Modifying the award to exclude (1) the Arbitrator's determination that Taylored prevailed on the restrictive covenants counterclaim, created *sua sponte* by the Arbitrator, and (2) the Arbitrator's determination that McHale was not entitled to attorneys' fees and costs because both parties had prevailed does not affect the merits of the claim actually submitted—whether it was reasonable for Taylored to fire McHale "for cause," and whether McHale was entitled to severance.

Thus, pursuant to *N.J.S.A.* § 2A:23B–24(a)(2), the Court modifies the Arbitration Award to the extent it purported to rule on a restrictive covenants counterclaim that was not submitted to the Arbitrator, as explained above. Because the Court finds that the Arbitrator's decision with respect to the restrictive covenants counterclaim was in error, the Court further modifies the Award to exclude the Arbitrator's determination that neither party was entitled to attorneys' fees and costs. Under section 17 of the Employment Agreement, McHale is entitled to fees and costs, since he prevailed on the only claim submitted to the Arbitrator.

Furthermore, pursuant to *N.J.S.A.* § 2A:23B–24(b), the Court confirms the award as modified and corrected. Specifically, the Court confirms the Award to the extent it awards McHale $215,416.67 in severance, and his fees and costs under section 17 of the Employment Agreement.

## CONCLUSION

For the reasons above, the Court grants the Motion to Confirm in Part and Modify in Part the Arbitration Award. An appropriate Order accompanies this Opinion.

DATED: July 7, 2016

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE